COMMONWEALTH *vs.* BERNARD B. SPINDEL.

Hampden.    January 6, 1967. — February 3, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Eavesdropping. Statute,* Validity. *Constitutional Law,* Due process of law.

Under G. L. c. 272, §§ 99–101, proof of a secret wire tapping on telephones in a building to intercept telephone communications was prima facie evidence of commission of the crime of eavesdropping where, although the tapping was done with the consent of the person in control of the building, it was not also authorized by a court order. [676–677]

Apparatus for tapping a telephone wire is not a "device" within the mean-
ing of that word in the last clause of G. L. c. 272, § 101.   [677]
G. L. c. 272, § 101, is not unconstitutional for want of sufficient clarity
and definiteness.   [678]

INDICTMENT found and returned on September 10, 1965.

The case was tried in the Superior Court before *Pills-
bury,* J.

The case was submitted on briefs.

*Daniel M. Keyes, Jr., Edward L. Donnellan, & William K.
Danaher, Jr.,* for the defendant.

*Edward W. Brooke,* Attorney General, and *Robert A.
Greeley & Donald N. Sweeney,* Special Assistant Attorneys
General, for the Commonwealth.

SPALDING, J.   A jury found the defendant guilty under
an indictment charging the crime of eavesdropping.[1]   G. L.
c. 272, §§ 99–101, as amended.   The judge, being of opinion
that there were questions of law so important and doubtful
as to require the decision of this court, reported the case,
the defendant consenting.   G. L. c. 278, § 30.

We summarize the report as follows: In 1962 Alamac
Knitting Mills, Incorporated, (Alamac) was engaged in
the manufacture of textiles in Springfield.   Alamac, em-
ploying some 800 people, occupied a large mill under a lease
of the entire premises from the owner.   Early in 1962 it
was suspected that employees were pilfering finished mate-
rials, and William Thal, Alamac's chief executive officer,
sought to ascertain the persons involved and how they oper-
ated.   He communicated with his security officer (an inde-
pendent contractor), and it was decided to tap telephones in
the mill.   At a meeting arranged between Thal and the
defendant to carry out this decision, Thal authorized the
defendant to place a wire tap on four telephones located in
different parts of the mill.   Thal also authorized the de-
fendant to place in a desk exclusively used by Thal one or
two wire or tape recorders so that conversations on the

---

[1] The indictment was tried with another indictment (No. 15,230) charging
Earl E. Jaycox with the same offence and he likewise was found guilty.   It
was agreed that the decision in the Spindel case would govern the Jaycox case.

tapped phones could be recorded and monitored. The defendant completed the wiring and installation of equipment necessary for the telephone monitoring. Thereafter, Thal recorded and monitored conversations emanating from the tapped telephones. The four telephones involved were owned, installed, and serviced by the New England Telephone and Telegraph Company and were used by various employees for outside calls as well as intraplant communication.[2] "Evidence was presented that employees involved did not consent to the monitoring of their telephone conversations. There was no evidence that any employee consented to such monitoring."

The jury were instructed that the word "device" appearing in the last clause of G. L. c. 272, § 101, as amended through St. 1956, c. 48, § 4,[3] "referred to an electronic recording device, or a wireless tap or a similar device not involving tapping of a wire to intercept telephone communications" and that this clause did not apply to the tapping of a telephone wire. "The jury . . . [were] further instructed that proof of the tapping of any wire shall be prima facie evidence of the crime of eavesdropping, (1) unless duly authorized by a court order issued in accordance with section 99 and (2) unless done with the consent of the owner or person in control of the building."

The questions reported are these: "(1) Is it lawful to tap a wire to intercept telephone communications in a building when authorized by and done with the consent of the owner or persons in control of the building but without a court order issued in accordance with G. L. c. 272, § 99? (2) Does the language of G. L. c. 272, § 101, meet the standard of clarity and definiteness as to the defendant in this case to satisfy the requirements of *Commonwealth* v. *Slome,* 321 Mass. 713?"

---

[2] The Commonwealth in its brief states that there was no evidence that the telephone company knew or participated in the acts of the defendant or that the defendant was acting as an employee or representative of the company.

[3] This clause reads "but nothing contained in this section or sections ninety-nine and one hundred shall render it unlawful for any person to install and use such a device on premises under his exclusive control."

1. We are of opinion that the instructions of the judge were correct. Section 101 reads: "Proof of the installation in any building of any device or arrangement which may be used for the purpose of violating the provisions of section ninety-nine by listening to any spoken words or proof of the tapping of any wire, unless duly authorized and unless done with the consent of the owner or person in control of the building, shall be prima facie evidence of the commission of the crime of eavesdropping; but nothing contained in this section or sections ninety-nine and one hundred shall render it unlawful for any person to install and use such a device on premises under his exclusive control." Under this section prima facie evidence of eavesdropping is established by proof of either of two things: (1) the installation of any device or arrangement which may be used for the purpose of violating § 99 by listening to spoken words or (2) the tapping of any wire,[4] "unless duly authorized and unless done with the consent of the owner or person in control of the building." The evidence reveals that the defendant placed a wire tap on four telephones within Alamac's premises. Thus we are concerned only with the second situation. On that issue, as stated above, the jury were instructed that proof of the tapping of any wire was prima facie evidence of the crime of eavesdropping unless there were both court authorization and consent of the owner or person in control of the building. This instruc-

[4] The pertinent portions of § 99 as amended through St. 1959, c. 449, § 1, are: "Whoever, except in accordance with an order issued as provided herein, secretly or without the consent of either a sender or receiver, overhears, or attempts secretly, or without the consent of either a sender or receiver, to overhear, or to aid, authorize, employ, procure, or permit, or to have any other person secretly, or without the consent of either a sender or receiver, to overhear any spoken words at any place by using any electronic recording device, or a wireless tap or electronic tap, or however otherwise described, or any similar device or arrangement, or by tapping any wire to intercept telephone communications, shall be guilty of the crime of eavesdropping and shall be punished by imprisonment for not more than two years or by a fine of not more than one thousand dollars, or both.

"Such order may be issued and shall be signed by any justice of the supreme judicial or superior court upon application of the attorney general or a district attorney for the district verified by his oath or affirmation that there are reasonable grounds to believe that evidence of crime may thus be obtained."

tion was required by § 101, which puts the prima facie evidence provision into operation upon "proof of the tapping of any wire, unless duly authorized and unless done with the consent of the owner or person in control of the building." It is to be noted that the requirements of court authority and consent of the owner or person in control are stated conjunctively. There was no evidence that any person obtained a court order authorizing the wire taps. There was evidence, however, that Thal exercised control of the knitting mill and consented to wire tapping by the defendant. But that was not enough. The prima facie effect of the evidence could be avoided only by proof also of court authorization.

The defendant's position is that the words "unless duly authorized" in § 101 mean that authority to eavesdrop can be conferred either by a court order issued under § 99 or by permission of a person having exclusive control of the premises where the eavesdropping would take place. Thus, it is argued, since Thal's consent to wire tap had been obtained by the defendant he was "duly authorized," and the judge's charge that there must also be court authorization was erroneous. This contention rests on the premise that the word "device" in the last clause of § 101 ("but nothing contained in this section or sections ninety-nine and one hundred shall render it unlawful for any person to install and use such a device on premises under his exclusive control") embraces the tapping of wires. Doubtless a wire tapping apparatus could be a "device." But to ascertain the meaning of that word in this statute it is necessary to read § 99 (see fn. 4), and the earlier provisions of § 101. Under those provisions a distinction is made between electronic recording or similar devices on the one hand and the tapping of a wire to intercept telephone communications on the other. We are of opinion that this distinction is preserved in the last clause of § 101 and that the word "device" in that section does not comprehend the tapping of wires.

Moreover if, as the defendant contends, exclusive control of the premises were to confer due authorization to wire

tap, then the relevant portion of § 101, as paraphrased, would read: ". . . or proof of the tapping of any wire, unless authorized by the person in exclusive control of the premises and unless done with the consent of the owner or person in control of the building . . .." The second condition (consent of the owner) would become redundant and meaningless under this construction, and we reject that result.

2. The other question reported is whether the language of § 101 satisfies the "standard of clarity and definiteness" set forth in *Commonwealth* v. *Slome*, 321 Mass. 713. There it was said at page 715, "A statute creating a crime must be sufficiently definite in specifying the conduct that is commanded or inhibited so that a man of ordinary intelligence may be able to ascertain whether any act or omission of his, as the case may be, will come within the sweep of the statute." The eavesdropping statute is not a paragon of clarity. A careful reading of it is required to ascertain what may or may not be done. Still, we are of opinion that it was not " '. . . so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . ..' " *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521.

3. The entry is to be

*Judgment affirmed.*